UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | |
|---|---|---|
| THE CINCINNATI INSURANCE COMPANY, | ) ) ) | Case No. 4:25-cv-40 |
| *Plaintiff*, | ) ) | Judge Travis R. McDonough |
| v. | ) ) | Magistrate Judge Christopher H. Steger |
| SELECT-TECH, INC., | ) ) ) | |
| *Defendant*. | ) | |

**MEMORANDUM AND ORDER**

Before the Court is Defendant Select-Tech, Inc.'s ("Select-Tech") motion to dismiss (Doc. 13). For the following reasons, the Court will **GRANT IN PART** and **DENY IN PART** Select-Tech's motion to dismiss.

I. **BACKGROUND**

A. **The Insurance Policies**

Plaintiff The Cincinnati Insurance Company ("Cincinnati Insurance") issued two insurance policies to Select Tech: (1) Policy No. EPP 0061080, a Commercial General Liability Policy (the "CGL Policy") for the period March 30, 2021 through January 24, 2024; and (2) Policy No. ENP 0705835, a CGL and Commercial Umbrella Policy (the "Umbrella Policy") for the period January 24, 2024 through January 24, 2025 (collectively, the "Policies"). (Doc. 12, at 2.)

The CGL Policy provides Select-Tech coverage for "personal and advertising injury," which is defined to include injuries resulting from "use of another's advertising idea in your

'advertisement'" and "[i]nfringing upon another's copyright, trade dress or slogan in your 'advertisement.'" (Doc. 12-1, at 1258.) The Policies define "Advertisement" as "a notice that is broadcast, telecast or published to the general public or specific market segments about your good, products or services for the purpose of attracting customers or supporters." (*Id*. at 1255.)

In addition to the terms providing coverage for "personal and advertising injury," the Policies include numerous exclusions regarding circumstances in which the insurance will not apply to alleged advertising injuries, including, but not limited to the following:

- **Knowing Violation of Rights of Another**

    o "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

- **Material Published with Knowledge of Falsity**

    o "Personal or advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

- **Material Published Prior to Coverage Term**

    o "Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the later of the following:

        (1) The inception of this Coverage Part; or

        (2) The "coverage term" in which insurance coverage is sought.

- **Quality or Performance of Goods – Failure to Conform Statements**

    o "Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

- **Infringement of Copyright, Patent, Trademark or Trade Secret**

    o "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

    However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

2

(Doc. 12-1, at 1247–48.)

### B. The Underlying Action

On March 25, 2025, Grover Products LLC ("Grover") filed an amended complaint asserting claims against Select-Tech and other defendants in the United States District Court for the Central District of California (the "Grover Action"). *See Grover Products LLC v. Air Horns of Tex., LLC*, Case No. 2:24-cv-8002 (C.D. Cal.). Grover manufactures air horns, and, in the Grover Action, it alleges, among other things, that: (1) Select-Tech has been "openly and falsely describing its products as 'Grover' products and using Grover model numbers since at least as early as 2016," and (2) Select-Tech has been openly using Grover Trademarks and model numbers since 2011. (Doc. 1-4, at 14–15.) Based on these allegations, Grover asserts claims against Select-Tech for: (1) Trademark Counterfeiting under 15 U.S.C. § 1114; (2) Trademark Infringement under 15 U.S.C. § 1114; and (3) False Designation of Origin/False Advertising under the Lanham Act, 15 U.S.C. § 1125(a). (*Id*. at 16–21.) Grover further alleges that Select-Tech's actions were intentional, willful and in bad faith. (*Id*. at 7–20.) On August 6, 2025, Cincinnati Insurance informed Select-Tech that it would defend Select-Tech in the Grover Action, subject to a full reservation of rights. (*See* Doc. 1-5.)

### C. The Present Action

Cincinnati Insurance initiated this action on August 11, 2025 (Doc. 1) and filed an amended complaint on September 17, 2025 (Doc. 12). In its amended complaint, it seeks a declaratory judgment that: (1) Select-Tech's Policies do not provide coverage for the allegations in the Grover Action, (2) it has no duty to defend or indemnify Select-Tech, and (3) it has no obligation to pay for Select-Tech's independent counsel. (Doc. 12, at 21–22.) Select-Tech has

moved to dismiss Cincinnati Insurance's amended complaint (Doc. 13), and the motion to dismiss is now ripe for the Court's review.

## II. STANDARD OF LAW

According to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though the statement need not contain detailed factual allegations, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion pursuant to Rule 12(b)(6). On a Rule 12(b)(6) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Id.* at 679. For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. This factual matter must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III.  ANALYSIS

Select-Tech has moved to dismiss Cincinnati Insurance's complaint, arguing that Cincinnati Insurance's requested declarations regarding insurance coverage are inconsistent with the terms of the governing policies and Tennessee law. (*See generally* Doc. 14.) Under Tennessee law, the interpretation of insurance contracts is governed by the same rules of construction used to interpret other contracts. *McKimm v. Bell*, 790 S.W.2d 526, 527 (Tenn. 1990). Insurance contracts "must be interpreted fairly and reasonably, giving the language its usual and ordinary meaning." *Naifeh v. Valley Forge Life Ins. Co.*, 204 S.W.3d 758, 768 (Tenn. 2006). "Insurance policies should be construed as a whole in a reasonable and logical manner." *Standard Fire Ins. Co. v. Chester O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 7 (Tenn. Ct. App. 1998). "[C]ourts interpreting insurance contracts must look to the contract as a whole." *ShoLodge, Inc. v. Travelers Indem. Co. of Ill.*, 168 F.3d 256, 259 (6th Cir. 1999). "Where there is no ambiguity, terms should be given their ordinary meaning, and neither party ought to be favored." *Id.* (citing *In re Estate of Clement,* 414 S.W.2d 644, 646 (Tenn. 1967)). "Where the terms are ambiguous, however, such ambiguities are to be construed against the drafter." *Id.* (citing *Grand Valley Lakes Property Owners Ass'n, Inc. v. Cary,* 897 S.W.2d 262, 267 (Tenn. Ct. App.1994)).

### A. Duty to Defend

Select-Tech first argues that the Court should dismiss Cincinnati Insurance's declaratory-judgment action because the Policies provide coverage and a duty to defend for "personal and advertising injury." (*See* Doc. 14, at 11–16.) Under Tennessee law, whether a duty to defend arises depends solely on the allegations contained in the underlying complaint. *St. Paul Fire & Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 835 (Tenn. 1994). Accordingly, insurers have a duty to defend when the underlying complaint alleges damages that are within the risk covered by the insurance contract and for which there is a potential basis for recovery. *Id.* "[T]he duty to defend is broader than the duty to pay or indemnify[.]" *Id.* at 835. "If even one of the allegations is covered by the policy, the insurer has a duty to defend, irrespective of the number of allegations that may be excluded by the policy." *Drexel Chem. Co. v. Bituminous Ins. Co.*, 933 S.W.2d 471, 480 (Tenn. Ct. App. 1996). However, if it is plain from the face of the underlying complaint that the allegations fail to state facts that bring the case within, or potentially within, the policy, then no duty to defend exists. *Id.* Any doubt as to whether a claimant has stated a cause of action within policy coverage is to be resolved in favor of the insured. *Dempster Bros., Inc. v. United States Fid. & Guar. Co.*, 388 S.W.2d 153, 156 (1964). "Comparing the injuries alleged in the complaint and the polic[ies] at issue is the starting point, and often the ending point, in analyzing an insurer's duty to defend." *Swafford v. Forestry Mut. Ins. Co.*, 68 F. Supp. 3d 796, 798 (E.D. Tenn. 2014).

The district court's decision in *Union Insurance Company v. Delta Casket Company, Inc.* Case No. 06-2090, 2009 WL 10665134 (W.D. Tenn. Dec. 4, 2009) is instructive in determining whether Cincinnati Insurance has a duty to defend Select-Tech in the Grover Action. In *Delta Casket*, a casket manufacturer sued one of its distributors alleging that the distributor imported

duplicate caskets and then advertised, marketed, and sold them as if they were the manufacturer's caskets. 2009 WL 10665134, at *5. Based on these allegations, the casket manufacturer asserted claims against the distributor for, among other things, false designation of origin pursuant to 15 U.S.C. § 1125(a) and copyright infringement. *Id*. The distributor's insurer filed a declaratory-judgment action seeking a declaration that it had no duty to defend the distributor under applicable policies, which provided coverage for "advertising injury." *Id*. at *6. Relying on the plain language of the applicable policies, which defined advertising injury to include "use of another's advertising idea in your 'advertisement,'" and "infringing upon another's copyright, trade dress or slogan in your advertisement," the court found that the insurer was under a duty to defend the distributor. *Id*. at *4, *6 Specifically, the court explained that the underlying action alleged an advertising injury triggering a duty to defend because the complaint included, among other things, allegations that the distributor "imported duplicate caskets and then advertised, marketed, promoted and sold them . . . as part of a scheme to pass of the duplicates as [the manufacturer's] products." *Id*. at *7.

Like the insurance company in *Delta Casket*, Cincinnati Insurance has a duty to defend Select-Tech in the Grover Action because Grover's amended complaint alleges it suffered an advertising injury based on Select-Tech's actions. Under the Policies, Cincinnati Insurance has a duty to defend Select-Tech in the Grover Action if Grover has alleged an "advertising injury," which includes "use of another's advertising idea in your 'advertisement'" and "[i]nfringing upon another's copyright, trade dress or slogan in your 'advertisement'." (Doc. 12-1, at 1258.) In the Grover Action, Grover specifically alleges, among other things, that: (1) "Select-Tech is—and has been for years—engaged in the advertising and sale of counterfeit Grover products;" (2) Select-Tech's website markets counterfeit products as Grover products; and (3) Select-Tech's

website "falsely and repeatedly claimed that [it] is a distributor of genuine Grover products." (*See* Doc. 1-4, at 13–22.) Like the underlying claims in *Delta Casket*, the claims Grover asserts against Select-Tech include allegations that its advertising contains false designations and descriptions of goods that are likely to cause confusion, mistake, or deception as to the source and true status of the products being marketed. As such, the complaint in the Grover Action clearly alleges an advertising injury under the plain language of the Policies, thereby triggering Cincinnati Insurance's duty to defend Select-Tech unless policy exclusions place the alleged conduct outside the Policies' limits.

## B. Exclusions under the Policies

Select-Tech next argues that the Court should dismiss Cincinnati Insurance's declaratory-judgment claims because none of the Policies' exclusions bar coverage or remove its duty to defend. Conversely, Cincinnati Insurance maintains that the following exclusions remove its duty to defend and bar coverage: (1) knowing violation of rights of another; (2) material published with knowledge of falsity; (3) material published prior to policy coverage term; (4) quality or performance of goods – failure to conform statements; and (5) infringement of copyright, patent, trademark or trade secret. (*See* Doc. 17, at 9–15.)

"Insurance policy exclusions help determine a policy's 'outer limits' because they serve only to decrease coverage." *Delta Casket*, 2009 WL 10665134, at *6. "Whether an exclusion clause will be given effect depends, not only on the language of the provision, but also on whether, if the clause is given effect the insurer, in light of its knowledge of the policyholder's business, would fail to provide the coverage that might reasonably be expected." *Id*. Under Tennessee law, "[e]xclusions in insurance policies must be strongly construed against the insurance company and in favor of the insured[,]" but exclusions should not "be so narrowly

8

construed as to defeat their evident purpose." *Capitol Indem. Corp. v. Braxton*, 24 F. App'x 434, 439 (6th Cir. 2001).

In this case, Cincinnati Insurance has a duty to defend Select-Tech in the Grover action because Grover's Lanham Act claim for false designation of origin alleges an advertising injury that is potentially not covered by policy exclusions. Although Grover alleges that Select-Tech's actions were intentional, willful, and in bad faith (*See* Doc. 1-4, at 13–22), Grover can nonetheless succeed on its Lanham Act claim against Select-Tech without proving an intent to deceive or knowledge of falsity. *See Cincinnati Ins. Co. v. Crown Labs., Inc.*, No. 2:08-cv-240, 2010 WL 11520005, at *9–*10 (E.D. Tenn. March 30, 2010). Under similar circumstances involving another Cincinnati Insurance policy, this Court concluded that, because the plaintiff in the underlying case can succeed on its claims with proof demonstrating less than intentional conduct, the "knowledge of falsity" and "knowing violation of the rights of another" exclusions did not obviate its duty to defend, noting that "the duty to defend arises if just one of the allegations is covered by the policy." *Id*. (citation modified).

Similarly, although the amended complaint in the Grover Action alleges that Select-Tech took certain actions and made certain representations prior to the inception of the policy and prior to the coverage term, the amended complaint also asserts a Lanham Act claim based on actions taken after inception of the policy and during the coverage term. As a result, even if Select-Tech published the material at issue prior to the policy coverage term, the "material published prior to policy coverage term" exclusion does not necessarily bar coverage as it relates to Grover's claims against Select-Tech. *Delta Casket*, 2009 WL 10665134, at *7 (noting that ambiguities are resolved in favor of the insured and explaining that "[t]o determine that some advertising materials were published before the effective date of the Policy, and, therefore, that

Plaintiff had no duty to defend, although other materials were published during the Policy period, would be an improper reading and application of the exception").

Finally, neither the "quality of goods" exclusion, nor the "infringement of copyright, patent, trademark, or trade secret" exclusion remove Cincinnati Insurance's duty to defend Select-Tech in the Grover Action. The Grover Complaint alleges that Select-Tech's products are "counterfeit" Grover products. (*See* Doc. 1-4, at 13–22.) Absent from Grover's amended complaint, however, are any allegations regarding the quality or performance the goods Select-Tech sold or allegations regarding whether those products conform with any statement regarding quality or performance in Select-Tech's advertisements. The allegation that Select-Tech sold counterfeit Grover products does not necessarily mean that the products it sold were of an inferior quality or failed to perform as advertised by Select-Tech. As a result, the plain language of the "quality of performance" exclusion does not operate to relieve Cincinnati Insurance of its duty to defend Select-Tech. Lastly, although Grover has alleged that Select-Tech committed trademark infringement, it has also alleged that Select-Tech engaged in false advertising and unfair competition under the Lanham Act that could potentially result in liability without a finding of trademark infringement. Accordingly, the exclusions in the Select-Tech's policies do not operate to relieve Cincinnati Insurance of its duty to defend Select-Tech in the Grover Action.

### C. Duty to Indemnify

The duty to indemnify depends upon "the true facts" of the underlying litigation, and it is therefore "not uncommon that an insurer will have a duty to defend based on the allegations in the complaint, yet have no subsequent duty to indemnify the insured." *Torpoco*, 879 S.W.2d at 835 (quoting *Am. Policyholders' Ins. Co. v. Cumberland Cold Storage Co.*, 373 A.2d 247 (Me.

1977)). At this early stage of this declaratory-judgment action, the true facts of the Grover Action are not available, and the Court cannot determine whether Cincinnati Insurance has a duty to indemnify Select-Tech. Accordingly, the Court will **DENY** Select-Tech's motion to the extent it contends Cincinnati Insurance has failed to state a claim for a declaratory judgment that it is not required to indemnify Select-Tech in connection with the Grover Action.

### D. Independent Counsel

Lastly, as part of its motion to dismiss, Select-Tech argues that Cincinnati Insurance is required to pay for Select-Tech's independent counsel. (Doc. 14, at 25–28.) In support of this argument, Select-Tech asserts counsel selected by Cincinnati Insurance to defend it in the Grover Action could work under a conflict of interest because the lawyer will be incentivized to maintain a positive relationship with the insurer to the detriment of the insured. (*See id.*) Select-Tech moved to dismiss Cincinnati Insurance's declaratory judgment claims. It has not, however, asserted counterclaims seeking a declaration regarding the scope of Cincinnati Insurance's duty to defend under the Policies. As a result, the Court need not rule on whether Cincinnati Insurance has complied with the terms of the Policies by providing Select-Tech counsel of its choosing or whether the Policies require Cincinnati Insurance to allow Select-Tech to choose its own counsel in connection with Select-Tech's motion to dismiss.

## IV. CONCLUSION

For the reasons stated herein, Select-Tech's motion to dismiss (Doc. 13) is **GRANTED IN PART** and **DENIED IN PART**. Select-Tech's motion to dismiss is **GRANTED** to the extent Cincinnati Insurance seeks a declaratory judgment that it does not have a duty to defend Select-Tech in the Grover Action. Select-Tech's motion to dismiss is **DENIED** to the extent Cincinnati Insurance seeks a declaratory judgment that it has a duty to indemnify Select-Tech in

the Grover Action and to the extent it asks the Court to declare that Select-Tech is entitled to independent counsel under the Policies.[1]

       **SO ORDERED.**

                                                                             **/s/** *Travis R. McDonough*
                                                                            **TRAVIS R. MCDONOUGH**
                                                                            **UNITED STATES DISTRICT JUDGE**

---

[1] The parties also filed a joint motion to extend the time for Select-Tech to file its reply in support of its motion to dismiss. (Doc. 18.) Select-Tech ultimately filed its reply before the Court ruled on the motion. (*See* Doc. 19.) Accordingly, the motion to extend (Doc. 18) is **DENIED AS MOOT**.